# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

**MICAH E. GLENN,**
        **Plaintiff,**

**v.**                                 **Case No. 06-C-0179**

**KRISTINA WIZA, DONNA HARRIS,**
**KRISTINE LAWRENCE,**
**DARRYL BUCHOLTZ and**
**JANICE CUMMINGS,**
        **Defendants.**

## DECISION AND ORDER

Plaintiff Micah E. Glenn, proceeding pro se, brings this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights arising from a 2000 parole revocation and a 2005 parole hold. Plaintiff's complaint names fifteen defendants and alleges eight causes of action. In a screening order dated July 6, 2006, District Judge Stadtmueller dismissed all but plaintiff's procedural due process and unlawful detention claims and dismissed numerous defendants. Before me now are plaintiff's motion for leave to file an amended complaint, plaintiff's motion to compel discovery, and defendants' motion to dismiss.[1]

## I. BACKGROUND

At all times relevant to this action, plaintiff was on parole.

---

[1] Defendants have actually filed two motions to dismiss. Their first motion, filed on August 25, 2006, argues that plaintiff's action should be dismissed on the basis of affirmative defenses and plaintiff's failure to state a claim. Their second motion, filed on January 10, 2007, argues that plaintiff's action should be dismissed for failure to prosecute, as plaintiff missed the deadline for filing his opposition to defendants' first motion to dismiss. I will deny defendants' motion to dismiss for failure to prosecute without further discussion, as plaintiff filed a brief on the very day that defendants filed their second motion to dismiss.

Plaintiff claims that in February 2000, after he was arrested for battery and criminal damage to property, he was detained on a parole hold and defendant Kristina Wiza (presumably plaintiff's parole agent) decided to seek revocation. He does not state that he received a preliminary hearing on this decision.[2] Plaintiff alleges that he was given notice that he had violated parole by choking a woman named Hannah and damaging property. Such notice, apparently produced either by Wiza or by defendant Donna Harris, listed as evidence a police report and a statement that plaintiff made to Wiza. Plaintiff states that Wiza did not submit her decision to seek revocation to defendant Harris for approval and Harris did not approve such decision, contrary to Wisconsin Department of Corrections (DOC) policy. On May 23, 2000, plaintiff received a final revocation hearing, after which the administrative judge found that plaintiff had choked Hannah, threatened to kill her, and damaged property, and revoked parole for two years, six months, and twenty-five days.[3] A little over a month later, plaintiff pleaded guilty to the underlying criminal charges of battery and damage to property and was sentenced to two years in prison running concurrent to the revocation time and eighteen months running consecutive to such time.

---

[2] It is not clear from the complaint whether plaintiff was entitled to a preliminary hearing. Such a hearing is held to determine whether there is probable cause that a parolee has committed acts that would constitute a violation of parole. Morrisey v. Brewer, 408 U.S. 471, 485 (1972). A parolee has no right to such a hearing in several situations, though, such as where he is not detained pending a final hearing, United States v. Sciuto, 531 F.2d 842, 846 (7th Cir. 1976); where he is detained pursuant to a criminal charge independent of the parole hold, United States v. Saykally, 777 F.2d 1286, 1287 n.2 (7th Cir. 1985); or where he admits to committing the act that constitutes a parole violation, United States v. Holland, 850 F.2d 1048, 1050-51 (5th Cir. 1988).

[3] Plaintiff administratively appealed this decision, arguing that he had not received notice of a charge that he had threatened to kill Hannah, but was unsuccessful. Plaintiff then challenged the decision in state court, again unsuccessfully.

2

Reading plaintiff's pro se complaint generously, the following possible allegations could give rise to a constitutional claim: that Wiza decided to seek revocation, and that Wiza and Harris failed to set a preliminary hearing and failed to notify plaintiff of a charge that he had threatened to kill Hannah. In plaintiff's proposed amended complaint, he articulates his claims somewhat differently but fails to alter their substance.

Turning to plaintiff's claims relating to his 2005 parole hold, plaintiff alleges that after his release from prison, defendant Kristine Lawrence (presumably plaintiff's new parole agent) would not allow plaintiff to review his record "due to prior errors in which the plaintiff was to already discharge on both case numbers." (Compl. at ¶35.) Then, in April 2005, Lawrence re-incarcerated plaintiff, placed him on a parole hold, and barred him from contacting a woman.[4] On August 16, 2005, plaintiff was again jailed pursuant to a hold. It appears that Lawrence decided not to seek revocation at that time, but rather sought an "Alternative to Revocation" (ATR) in the form of custodial programs targeting problems with domestic violence, substance abuse and anger management. On August 24, 2005, plaintiff received notice of violations and signed a form consenting to the ATR. However, plaintiff alleges that Lawrence was unable to place plaintiff in the ATR by October 23, 2005 – sixty days after his receipt of notice and consent to ATR – contrary to DOC policy. Plaintiff seems to allege that Lawrence communicated with her supervisor, defendant Janice Cummings, about the ATR, but did so too late to secure a place in the ATR program by October 23. Plaintiff complained to Cummings and defendant Darryl Bucholtz (apparently also a parole supervisor) but to no avail. Plaintiff alleges that he entered the ATR program on October 31, 2005 – eight days too late. He does

---

[4]Petitioner does not elaborate on what may have led to his 2005 parole hold.

3

not state that he ever received a hearing. After completion of the ATR program, plaintiff was released from custody, though he is still on parole.[5]

The contours of plaintiff's claims regarding his 2005 parole hold are unclear; however, again I give plaintiff's complaint a generous interpretation. First, when he states that Lawrence would not review the record "due to prior errors," he is either claiming that Lawrence miscalculated his parole discharge date, thus improperly subjecting him to parole restrictions, or he is claiming that Lawrence failed to recognize the 2000 parole revocation errors that he cites above. Further, plaintiff seems to claim that because he was incarcerated for more than sixty days prior to entering an ATR program, he was entitled to have his parole revoked and thus entitled to a hearing. He primarily faults Lawrence failing to set a hearing or release him. However, he also alleges that defendant Bucholtz failed to set a hearing and that Bucholtz and Cummings failed to overrule Lawrence. In plaintiff's proposed amended complaint, he again articulates his claims somewhat differently but fails to alter their substance.

Plaintiff requests a declaratory judgment that defendants violated his right to due process; an injunction reversing the 2000 revocation decision, expunging the revocation from state records and discharging plaintiff from DOC supervision; and an award of compensatory and punitive damages.

## II. MOTION TO COMPEL

Plaintiff recently filed a motion to compel defendants to give him information relating to the duties of previously-dismissed defendant David Schwartz. As Schwartz is no longer a

---

[5]In fact, it appears that plaintiff is once again in jail. However, he was not incarcerated at the time that he filed his original complaint and this case does not address his present incarceration.

4

defendant, this information is clearly irrelevant.[6] Thus, I will deny plaintiff's motion to compel.

## III. MOTION TO DISMISS

Defendants primarily argue that plaintiff's claims are barred by absolute immunity and that they are not cognizable in a § 1983 action. They further argue that plaintiff's complaint fails to state a valid constitutional claim and that they are protected by qualified immunity.

**A.   Standard**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. GE Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal of an action under such a motion is warranted only if it is clear that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts; it is that even assuming all of his facts are accurate, he has no legal claim. Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 627 (7th Cir. 1999). In ruling on such a motion, a court must assume that all of the facts alleged in the complaint are true and draw all reasonable inferences from those facts in the light most favorable to the plaintiff. Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir. 1990).

**B.   Absolute Immunity**

Absolute immunity is a complete defense to liability for monetary damages. However, "absolute immunity from civil liability for damages is of a 'rare and exceptional character.'"

---

[6]Plaintiff erroneously believes that I may reinstate Schwartz in determining defendants' motion to dismiss. However, as Schwartz has previously been dismissed, the motion to dismiss does not address his role in this action.

5

Auriemma v. Montgomery, 860 F.2d 273, 275 (7th Cir. 1988) (quoting Cleavinger v. Saxner, 474 U.S. 193, 202 (1985)), and there is a presumption against granting government officials absolute immunity, Houston v. Partee, 978 F.2d 362, 368 (7th Cir. 1992). To determine whether a public official is absolutely immune from suit, the Supreme Court has adopted an approach that focuses on "the nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 229 (1988).

Parole agents are entitled to absolute immunity when they perform activities that are analogous to those performed by judges or prosecutors. Dawson v. Newman, 419 F.3d 656, 662 (7th Cir. 2005). Such activities include the final decision to grant, revoke or deny parole, and the signing of an arrest warrant. Dawson, 419 F.3d at 662. Absolute immunity is extended even to a parole agent's routine activities if the activities are sufficiently adjudicative in nature, such as scheduling (or failing to schedule) a hearing. Walrath v. United States of America, 35 F.3d 277, 283 (7th Cir. 1994); Thompson v. Duke, 882 F.2d 1180, 1184-85 (7th Cir. 1989). However, absolute immunity does not extend to duties of a parole agent that are analogous to those performed by police officers, as opposed to judges or prosecutors. Wilson v. Kelkhoff, 86 F.3d 1438, 1446 (7th Cir. 1996). Duties that are analogous to those performed by police officers include investigating potential charges, initiating revocation proceedings and issuing notices of charges. Id. at 1445-46.

Examining plaintiff's allegations in light of the above case law, it is clear that all defendants are immune from suit for damages related to any failure to set hearings regarding plaintiff's revocation and detention. See Walrath, 35 F.3d at 283. However, it appears that Wiza is not immune from suit for damages relating to any claim that she decided to seek revocation; and neither Wiza nor Harris are immune from any claim that they failed to include

6

a charge that plaintiff had threatened a woman in plaintiff's notice of charges. See Wilson, 86 F.3d at 1445-46. Additionally, Lawrence is not immune from any claim arising from plaintiff's contention that she would not allow plaintiff to review his record "due to prior errors in which the plaintiff was to already discharge on both case numbers." Whether such allegation indicates that Lawrence miscalculated his parole discharge date or that Lawrence failed to review the legality of plaintiff's parole, neither activity is similar to one performed by a judge or prosecutor. See Dawson, 419 F.3d at 662 (holding that parole officers were not absolutely immune from charges that they ignored plaintiff's statements that the conviction upon which his parole was based had been reversed and "refused to investigate his claim of entitlement to release").

Finally, I conclude that Lawrence is not immune from any claim for damages arising from a decision to detain plaintiff for sixty-eight days in the absence of legal process, and that neither Bucholtz nor Cummings are immune from any claim for damages arising from their failure to overrule such decision. See Swift v. California, 384 F.3d 1184, 1192 (9th Cir. 2004) (stating that where a parole agent decides to take a parolee into custody and book him into a local jail, he "functions as a police officer"); Wilson, 86 F.3d at 1446 (distinguishing between actions similar to those taken by police officers and those taken by judges or prosecutors).

## C.     Availability of § 1983

Claims challenging the fact or duration of state confinement are not cognizable under § 1983. Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006). This is true whether a claimant seeks an injunction, Preiser v. Rodreguez, 411 U.S. 475, 490 (1973), or seeks damages, Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), and regardless of the nature of that confinement, "whether a warrant, indictment, information, summons, parole revocation, conviction or other judgment, or disciplinary punishment for the violation of a prison's rules." Antonelli v. Foster,

7

104 F.3d 899, 900-01 (7th Cir. 1997); see also Knowlin v. Thompson, 207 F.3d 907, 909 (7th Cir. 2000) (finding that Heck bars a § 1983 suit that would necessarily imply the invalidity of a parole revocation). However, a claimant is not barred from bringing a § 1983 suit that challenges official misconduct unrelated to legal process, including detention in the absence of any legal process. Antonelli, 104 F.3d at 901 (stating that Heck would not bar a claim of "an unconstitutional arrest without a warrant, the gratuitous beating of the arrested person, his confinement in the Black Hole of Calcutta whether pre- or postconviction, and so forth").

Plaintiff's remaining claims against Wiza and Harris regarding his 2000 parole revocation are clearly barred by Preiser and Heck. Plaintiff asserts that, due to the actions of defendants Wiza and Harris, the procedures leading to the final revocation decision were constitutionally deficient. While the Supreme Court in Heck left open the possibility that § 1983 could be employed to challenge use of the wrong procedures, rather than reaching the wrong result, the Court later made clear that even a challenge to procedures could necessarily imply the invalidity of the judgment. Edwards v. Balisok, 520 U.S. 641, 645-48 (1997). If there were any confusion as to whether plaintiff's allegations challenged the validity of the revocation, his request that, as a remedy, I should "[i]mmediately arrange for [his 2000] Revocation Hearing decision . . . [to] be reversed" would clear up such confusion. (See Compl. at final unnumbered page). Further, if plaintiff's complaint against Lawrence regarding her refusal to allow plaintiff to review his record "due to prior errors" intends to invoke a claim that Lawrence should have investigated the 2000 parole revocation and determined that it was void due to procedural errors, then such claim is similarly barred. As such, I will dismiss plaintiff's claims against Wiza and Harris without prejudice, along with any claim that Lawrence should have discovered errors in plaintiff's 2000 revocation. If plaintiff convinces a state court (or a federal habeas court) to

8

reverse the 2000 revocation decision, then he may bring a § 1983 claim for damages relating to the nullified decision. See Copus v. City of Edgerton, 96 F.3d 1038, 1039 (7th Cir. 1996) (stating that where Heck bars a § 1983 claim, a district court should dismiss such claim without prejudice so that the plaintiff may collaterally attack the legal process that led to his confinement).

Plaintiff's remaining possible claims against Lawrence, Bucholtz and Cummings, regarding his 2005 parole hold, are not so barred. If plaintiff's allegation that Lawrence refused to allow plaintiff to review his record indicates that she mistakenly found him to be on parole in 2005, or if plaintiff was detained for sixty-eight days without a hearing and without his consent,[7] then his 2005 detention may have violated the Fourth and Fourteenth Amendments. See Faheem-El v. Klincar, 814 F.2d 461, 465 n.2 (7th Cir. 1987) (stating that a plaintiff's challenge to a "policy of denying all parolees any consideration for release pending the final revocation hearing was properly brought as a § 1983 action") (citing Gerstein v. Pugh, 420 U.S. 103 (1975)); Gerstein, 420 U.S. at 125 (holding that the Fourth Amendment requires the states to "provide a fair and reliable determination of probable cause" either before or promptly after taking a suspect into custody). And such a claim is not barred by Preiser and Heck. See Antonelli, 104 F.3d at 901 (discussing detention in the absence of legal process).

**D.    Defendants' Remaining Arguments**

---

[7] It may be that plaintiff signed a hearing waiver in his ATR consent form. Given plaintiff's indignation that he was held eight days too long, I suspect that plaintiff signed something waiving a hearing for a period of sixty days pending placement in an ATR program. However, this is not clear from plaintiff's complaint or from any other document currently in the record. Further, if plaintiff did waive a hearing, but only for a limited period of time, it is not clear whether the Constitution would have required defendants to hold a hearing as of the day that such waiver expired. In any event, I cannot find at this time that plaintiff's remaining claims against Lawrence, Bucholtz, and Cummings are barred by Preiser and Heck.

9

Defendants also argue that plaintiff's claims fail because there was an adequate post-deprivation state remedy, see Easter House v. Felder, 910 F.2d 1387, 1404 (7th Cir. 1990), because plaintiff has failed to state a procedural due process claim, and because defendants are entitled to qualified immunity. The first argument fails, as the remaining conceivable claims have made it this far because plaintiff's complaint does not establish that he had post-deprivation remedies available during his 2005 detention.

Turning to defendants' second argument, given that § 1983 liability "does not attach unless the individual defendant caused or participated in a constitutional deprivation," Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996), there is some question as to whether plaintiff has stated a claim with respect to defendants Bucholtz and Cummings. In order to be liable for conduct of their subordinates, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." Jones v. Chicago, 856 F.2d 985, 992-93 (7th Cir. 1988). Plaintiff's complaint does not reveal the extent to which Bucholtz and Cummings participated in the decision to detain him. However, plaintiff states that he complained of such detention by letter to both defendants, and that they both rejected his complaints. Given these allegations, it is possible that plaintiff could show that Bucholtz and Cummings acted knowingly or with deliberate, reckless indifference.

Finally, as to qualified immunity, when government officials perform discretionary functions, they are entitled to a qualified immunity defense that shields them from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In assessing whether a defense of qualified immunity is applicable, the court must

10

address two questions: 1) whether the plaintiff has asserted a violation of a constitutional right, and 2) whether the applicable constitutional standards were clearly established at the time in question. Levenstein v. Salafsky, 164 F.3d 345, 351 (7th Cir. 1998). With respect to plaintiff's remaining claims, it is clearly established that a state cannot hold a person in custody without some judicial determination that state officials have probable cause justifying holding such person. Because plaintiff's complaint does not establish that he waived his right to a hearing on his detention, his complaint does not foreclose a valid claim against defendants Lawrence, Bucholtz and Cummings arising under the Fourth and Fourteenth Amendments.

## IV. MOTION FOR LEAVE TO AMEND

As indicated above, plaintiff's proposed amendments to his complaint do not add factual allegations that alter the substance of his complaint or cure any defects in his complaint. As such, I will deny plaintiff's motion for leave to amend his complaint. Foman v. Davis, 371 U.S. 178, 182 (1962) (stating that a court may deny a motion for leave to amend for – among other reasons – futility of amendment).

## V. CONCLUSION

As described in the above analysis, I will dismiss all of plaintiff's claims except for any claims that plaintiff was unlawfully detained in 2005 without a hearing. As such, I will dismiss defendants Wiza and Harris from this case. In closing, I note that should plaintiff prevail on his remaining claims, given their nature, injunctive relief relating to his 2000 revocation hearing and his current custody status would not be appropriate.

**Therefore,**

**IT IS ORDERED** that defendants' January 10, 2007, motion to dismiss for failure to

11

prosecute is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to compel is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's August 25, 2006, motion to dismiss is **GRANTED IN PART AND DENIED IN PART**, as described herein.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file an amended complaint is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to stay is **DENIED AS MOOT**.

**FINALLY, IT IS ORDERED** that defendants Kristina Wiza and Donna Harris are **DISMISSED** from this case.

Dated at Milwaukee, Wisconsin, this 5 day of March, 2007.

/s
LYNN ADELMAN
District Judge